# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robert Rufus, Jack Tolliver, and**
**Greenbrier Property Group, LLC,**
**Plaintiffs Below, Petitioners**

**vs) No. 13-0218** (Greenbrier County 12-C-107)

**The Greenbrier Sporting Club Development**
**Company, Inc., a Delaware corporation,**
**James Staton, in his official capacity as Sales**
**Representative of the Greenbrier Sporting Club**
**Development Company, Inc., United Bank, Inc.,**
**a West Virginia corporation, Melinda R. Smailes,**
**in her official capacity as Vice President and Loan**
**Officer of United Bank, Inc., Stan McQuade and**
**Thelma McQuade, d/b/a McQuade Appraisal Service,**
**Defendants Below, Respondents**

and

**John Smith and Robert Smith,**
**Defendants and Cross-Claim Plaintiffs Below,**
**Petitioners**

**vs) No. 13-0219** (Greenbrier County 12-C-107)

**The Greenbrier Sporting Club Development**
**Company, Inc., a Delaware corporation,**
**James Staton, in his official capacity as Sales**
**Representative of the Greenbrier Sporting Club**
**Development Company, Inc., United Bank, Inc.,**
**a West Virginia corporation, Melinda R. Smailes,**
**in her official capacity as Vice President and Loan**
**Officer of United Bank, Inc., Stan McQuade and**
**Thelma McQuade, d/b/a McQuade Appraisal Service,**
**Defendants Below, Respondents**

**FILED**

**November 8, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioners Robert Rufus, Jack Tolliver, and Greenbrier Property Group, LLC, by counsel Paul E. Biser, and Petitioners John Smith and Robert Smith, by counsel Amy C. Crossan, appeal

1

the January 16, 2013, order of the Circuit Court of Greenbrier County that dismissed their respective civil actions. Respondents The Greenbrier Sporting Club Development Company, Inc., a Delaware corporation, James Staton, in his official capacity as Sales Representative of the Greenbrier Sporting Club Development Company, Inc., United Bank, Inc., a West Virginia corporation, Melinda R. Smailes, in her official capacity as Vice President and Loan Officer of United Bank, Inc., Stan McQuade and Thelma McQuade, d/b/a McQuade Appraisal Service, by counsel E. Taylor George and John L. MacCorkle, filed a response. Petitioners John Smith and Robert Smith filed a reply. This Court consolidates the respective appeals for purpose of decision.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

### FACTUAL AND PROCEDURAL HISTORY[1]

In March of 2005, John Smith entered into a purchase and sale agreement to buy an undeveloped tract of land located in White Sulphur Springs, Greenbrier County, West Virginia, from Respondent The Greenbrier Sporting Club Development Company, Inc., ("Sporting Club") for $595,000. The undeveloped tract of land, identified as #10 Traveler's Hill ("the property"), is located at the Greenbrier Sporting Club. Thereafter, John Smith and Robert Smith ("the Smiths") met with Robert Rufus and Jack Tolliver to discuss this real estate investment opportunity. The Smiths informed Rufus and Tolliver that the Sporting Club told them that the owners of the property were divorcing and were willing to sell the lot at a substantial loss. The Smiths told Rufus and Tolliver that the Sporting Club told them that the fair market value of the lot exceeded $900,000. After discussions, the four men agreed to purchase the property with the intent to sell it for a profit.

---

[1]This appeal arises out of the dismissal of claims filed in Greenbrier County. We note that prior to the Greenbrier County lawsuit, Robert Rufus, Jack Tolliver, John Smith and Robert Smith, and Greenbrier Property Group, LLC, filed suit in Cabell County in July of 2011 against respondents herein. The Cabell County complaint asserted claims allegedly arising out of the same 2005 land sale that would eventually be the subject of the Greenbrier County case.

After respondents moved to dismiss the Cabell County complaint for improper venue, the Cabell County plaintiffs moved to file an amended complaint. The proposed amended complaint realigned John Smith and Robert Smith as parties and attempted to reclassify them as defendants. The proposed amended complaint added allegations that the Smiths knew of the purportedly fraudulent acts, occurring prior to the purchase of the property at issue, that had been attributed to the parties originally named as defendants in Cabell County.

The Cabell County Circuit Court found that the proposed amended complaint was a "sham." The Circuit Court of Cabell County entered a final order dismissing the case on grounds of improper venue. Thereafter, the Greenbrier County complaint was filed which is the subject of the instant appeal.

2

The corporate plaintiff, Petitioner Greenbrier Property Group ("GPG"), was formed on April 27, 2005, to be the title owner of the property. GPG's four members are the individual plaintiffs below and petitioners herein, Rufus and Tolliver, along with the Smiths, defendants and cross-claim plaintiffs below, and petitioners herein.[2] GPG financed the purchase of the property through Respondent United Bank, Inc. ("United"). United obtained an independent appraisal of the property through Respondent McQuade Appraisal Service ("McQuade"), who appraised the property at $650,000.[3] The loan closed on April 28, 2005, and the Deed of Trust was recorded in Greenbrier County on May 2, 2005.

On May 11, 2012, over seven years after the purchase of the property, petitioners filed a seven count complaint asserting the following claims: Count I – fraud in the inducement; Count II – constructive fraud; Count III – breach of fiduciary duty; Count IV – negligent misrepresentation; Count V – breach of duty to use due diligence and fair dealing; and Count VI – civil conspiracy. Count VII of the complaint asserted a breach of fiduciary duty claim against the Smiths. The complaint alleged that the Sporting Club marketed and sold property at greatly inflated prices and that United had actual knowledge of the inflated values of the property. The complaint further alleged that the Sporting Club made false representations, including that the lot was a distressed sale, worth over $900,000. The allegations against the Smiths were that they were the individuals who dealt with respondents in the negotiations, and with United regarding the loan. The Smiths were alleged to have brought the deal to Rufus and Tolliver, representing it as a no-risk opportunity. The allegations against the Smiths were that they knew or should have known that the actions of the other defendants were fraudulent, and that they had a fiduciary duty to use reasonable care in their investigation of the real estate, and that they breached this duty.

On October 16, 2012, the Smiths filed their answer wherein they admitted every element of the complaint except those matters directly stated against them. The Smiths also asserted cross-claims against respondents that are identical to petitioners' claims. The Smiths sought no relief against petitioners. In sum, all of the claims are based upon allegations that respondents were involved in a fraudulent scheme to sell the property at an inflated price.

Respondents filed motions to dismiss and motions for judgment on the pleadings with respect to all claims. The circuit court heard oral arguments on respondents' motions on December 11, 2012.

On January 16, 2013, the circuit court dismissed all claims as time-barred pursuant to the two-year statute of limitations set forth in West Virginia Code § 55-2-12. The circuit court employed the five-part test set forth by this Court in Syllabus Point 5 of *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009), and held that: (1) the identical claims in the complaint and

---

[2]To avoid confusion, we refer to the two sets of petitioners herein separately. Robert Rufus, Jack Tolliver, and GPG are referred to as "petitioners," John Smith and Robert Smith are referred to as "the Smiths."

[3]The complaint and cross-claim do not allege that McQuade or United made any misrepresentations to petitioners or the Smiths regarding this real estate investment opportunity.

3

cross-claim were governed by the two-year statute of limitations; (2) the elements of the causes of action occurred no later than April 28, 2005, the date of the loan closing; (3) the discovery rule did not apply because the Smiths had knowledge of the alleged fraud on or before April 28, 2005; (4) there were no allegations that respondents fraudulently concealed facts preventing the Smiths from discovering or pursuing their causes of action; and (5) no other tolling doctrine applied. Petitioners and the Smiths appeal from this order and request this Court remand the case for a jury trial to resolve the factual issue surrounding application of the discovery rule.

## DISCUSSION

On appeal to this Court, petitioners assert that the circuit court improperly disposed of their lawsuit by way of a dismissal on the pleadings. The Smiths contend further that the circuit court improperly dismissed their cross-claims of fraud and misrepresentation on the basis of res judicata. We begin our analysis with the standard of appellate review. Then, we will address the merits of the parties' arguments.

### Standard of Review

This case is before the Court on appeal from the circuit court's order granting respondents' motion to dismiss made pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. This Court reviews a circuit court's order granting a motion to dismiss a complaint under a de novo standard. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

### Petitioners' Claims

Petitioners argue that the discovery rule is applicable because they did not become aware of the alleged fraudulent scheme until November of 2010. Petitioners also contend that the circuit court erred in granting a motion for judgment on the pleadings by accepting as true the allegations set forth in their complaint.

Respondents, conversely, contend that all claims were dismissed properly because the two-year statute of limitations period lapsed on April 28, 2007. Respondents assert that the discovery rule is not applicable because the complaint alleged the Smiths had knowledge of the alleged fraud at the time the property was purchased in 2005 and that knowledge was therefore imputed to GPG.[4]

---

[4]Respondents also argue that the claims of the individual petitioners must be dismissed for other reasons not resolved below. Respondents argue that Petitioners Rufus and Tolliver and the Smiths lacked standing to assert any claims arising from the purchase of the property. The transaction at issue, the sale of the property, was between a single business entity, GPG, and a non-party, Old Gun Properties, LLC. Respondents request we find that Petitioners Rufus and Tolliver and the Smiths have no interest in the property at issue that would give them standing to assert claims as individuals. As discussed further in this decision, we affirm the circuit court's order dismissing the claims as time-barred. Therefore, we decline to address the issue of standing.

4

To resolve the question of whether the claims are time-barred, we apply the analysis articulated in Syllabus Point 5 of *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009), which states,

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

The only pertinent step of the above analysis at issue in this appeal is whether petitioners are entitled to the benefit of the discovery rule.[5] Upon reviewing the appendix record and the briefs of the parties, we find that the circuit court was correct to conclude that application of the discovery rule would not serve to toll the statute of limitations. Therefore, we affirm the decision of the circuit court because it is evident from the pleadings that the claims are time-barred.

West Virginia law provides that a limited liability company, such as GPG, is credited with the knowledge of each of its individual members.[6] The knowledge of the Smiths, as

---

[5]In Syllabus Point 4 of *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), this Court stated that the discovery rule may toll the statute of limitations if the following conditions are met:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

[6] West Virginia Code § 31B-1-102(e) states that

members of GPG, is therefore imputed to GPG. In their complaint, petitioners alleged that two members of GPG knew or should have known of the existence of the alleged fraudulent scheme prior to the land sale at issue. We begin with the proposition that "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *Cantley v. Lincoln County Com'n*, 221 W.Va. 468, 470, 655 S.E.2d 490, 492 (2007) (quoting *John W. Lodge Distributing Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978). Thus, petitioners admitted that GPG was or should have been aware of the alleged fraudulent scheme, immediately upon formation of the limited liability company in April of 2005, because as at least two of its four members, the Smiths, knew of the scheme at the relevant time.

It is imperative to acknowledge that the transaction at issue here is the purchase of the property. All four members of GPG acted on its behalf in that transaction – all four members signed the deed of trust. Accordingly, the knowledge possessed by each of those members was imputed to the limited liability company on that date.[7]

### The Smiths' Cross-claims

The circuit court found that because petitioners and the Smiths relied "upon the exact same facts to establish their causes of action, the same results apply equally to cross-claimants" as to petitioners. We agree and find that dismissal of the complaint bars the identical cross-claims on the basis of res judicata. *See Blake v. CAMC, Inc.,* 201 W.Va. 469, 476, 498 S.E.2d 41, 48 (1997) ("under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action") (quoting *Porter v. McPherson,* 198 W.Va. 158, 166, 479 S.E.2d 668, 676 (1996)).

---

[a]n entity knows, has notice or receives a notification of a fact for purposes of a particular transaction when the individual conducting the transaction for the entity knows, has notice, or receives a notification of the fact, or in any event when the fact would have been brought to the individual's attention had the entity exercised reasonable diligence. An entity exercises reasonable diligence if it maintains reasonable routines for communicating significant information to the individual conducting the transaction for the entity and there is reasonable compliance with the routines. Reasonable diligence does not require an individual acting for the entity to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and that the transaction would be materially affected by the information.

[7] Petitioners seek to avoid this result by focusing on the wrong date. They contend the relevant transaction is the execution of the contract to purchase the property by John Smith, which occurred on March 11, 2005, before GPG was formed. This argument ignores the fact that no claims existed until the property was actually purchased. Here, the mere signing of the contract to purchase the property is not the relevant act for purposes of the statute of limitations analysis.

6

**CONCLUSION**

It is clear from the pleadings that the cause of action accrued in April of 2005. Petitioners filed their complaint over seven years later, and the Smiths filed their cross-claims thereafter. Accordingly, we find the circuit court properly applied the two-year statute of limitations in dismissing the claims. *See* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[2], at 388 (4th ed. 2012) ("A statute of limitations may support dismissal under Rule 12(b)(6), where it is evident from the plaintiff's pleading that the action is barred, and the pleading fails to raise some basis for tolling or the like.").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 8, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7